UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| | ) | |
| **STEVEN FRANCIS D'AMICO,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 22-cv-10873-DJC |
| | ) | |
| **FIDELITY BROKERAGE SERVICES LLC,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                              February 21, 2024

**I.      Introduction**

Plaintiff Steven Francis D'Amico ("D'Amico") filed this lawsuit against Defendant Fidelity Brokerage Services LLC ("Fidelity"), alleging fraud, breach of contract, breach of fiduciary duty and conversion. D. 1, 11. Fidelity has moved to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"). D. 15. For the reasons discussed below, Fidelity's motion to compel arbitration, D. 15, is ALLOWED.

**II.     Standard of Review**

When ruling on such a motion, courts should "draw [upon] the relevant facts from the operative complaint and the documents submitted to the [Court] in support of the motion to compel arbitration." Cullinane v. Uber Techs, Inc., 893 F.3d 53, 55 (1st Cir. 2018). Courts have applied a summary judgment standard to motions to compel where the parties have "relied extensively upon exhibits filed in the record outside of the complaint." Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 258 F. Supp. 3d 255, 259 (D.P.R. 2017); see Pelletier v. Yellow Transp., Inc., 503 F.

1

Supp. 2d 397, 399 (D. Me. 2007).  Accordingly, on a motion to compel arbitration, the Court "consider[s] facts in the light most favorable to the [non-movant] . . . and exercise[s] its 'wide discretion' to look beyond the complaint at pleadings and documents submitted by either party." Boulet v. Bangor Sec. Inc., 324 F. Supp. 2d 120, 123–24 (D. Me. 2004) (quoting Anderson v. Delta Funding Corp., 316 F. Supp. 2d 554, 558 (N.D. Ohio 2004)); see Proulx v. Brookdale Living Cmtys. Inc., 88 F. Supp. 3d 27, 29 (D.R.I. 2015) (citing cases).

### III. Factual Background

The following facts are undisputed unless otherwise indicated.

#### A. IRA Customer Agreement

On or about December 1, 1998, D'Amico submitted an application to open an individual retirement account with Fidelity with an account number ending in "8068" (the "IRA Account"). D. 16-1 at 2 ¶ 4, 5–10; D. 17-1 ¶ 2.  The application included a paragraph stating, in relevant part, "**I have read the Fidelity Brokerage IRA Customer Agreement and agree to be bound by such Customer Agreement as is currently in effect and as may be amended from time to time. This IRA is governed by a pre-dispute arbitration clause, which is found in paragraph 5 of the Customer Agreement, and I acknowledge receipt of the predispute arbitration clause.**" D. 16-1 at 10 (emphasis in original).  Immediately below this paragraph was a signature and date line, where D'Amico wrote his signature and the date "12 - 1 - 98." Id.

On December 1, 1998, paragraph 5 of the customer agreement referenced in the application (the "IRA Customer Agreement") provided, in relevant part, as follows, under the heading "Pre-Dispute Arbitration Agreement":

I AM AWARE OF THE FOLLOWING:

(A)  ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

(B) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

. . .

I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN US CONCERNING ANY ORDER OR TRANSACTION, OR THE CONTINUATION, PERFORMANCE OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO BEFORE, ON OR AFTER THE DATE THIS ACCOUNT IS OPENED, SHALL BE DETERMINED BY ARBITRATION BY A PANEL OF INDEPENDENT ARBITRATORS SET UP BY EITHER THE NEW YORK STOCK EXCHANGE, INC. OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., AS I MAY DESIGNATE.  I MAY ALSO DESIGNATE THE AMERICAN ARBITRATION ASSOCIATION OR ANY OTHER INDUSTRY FORUM ONLY TO THE EXTENT EXPRESSLY PROVIDED AS AN ALTERANTIVE UNDER THE SECURITIES LAWS OF MY STATE OF RESIDENCE . . . .

Id. at 12–13.

B.  **Cash Account Customer Agreement**

According to an affidavit by Joseph P. Bacon, a senior manager at Fidelity's parent company FMR LLC familiar with Fidelity's record keeping systems, D'Amico's accounts and corresponding account agreements, D'Amico opened a cash account with Fidelity with an account number ending in "6648" (the "Cash Account") on or about July 23, 2010.  Id. at 2 ¶¶ 1–3, 3 ¶ 6. D'Amico opened the Cash Account through an electronic application.  Id. at 3–4 ¶ 6.  The electronic application included a checkbox next to a paragraph prompting the applicant to "acknowledge that you have been provided, have read, understood, and agree to be bound by all the terms and conditions set forth in this application, including but not limited to the documents in electronic format provided in the Customer Agreement above."  Id. at 21.  The subsequent paragraph provided, "**This account is governed by a pre-dispute arbitration clause which is part of the customer agreement and which is accessible by clicking on the preceding underlined link.  I acknowledge receipt of the pre-dispute arbitration clause.**"  Id. (emphasis

in original). The record contains a copy of this agreement where the checkbox next to these paragraphs has been checked and where D'Amico's name and personal information has been included in the relevant boxes, id. at 2–3 ¶ 6, 19–21, thus indicating his assent to these terms and this agreement. Id. at 3 ¶ 6, 21.

The customer agreement governing the Cash Account ("Cash Account Customer Agreement"), effective on the date D'Amico purportedly submitted the electronic application, includes a section titled "**Resolving Disputes—Arbitration**." Id. at 3 ¶ 7 (emphasis in original). In this section, the Cash Account Customer Agreement reiterates that the agreement "contains a pre-dispute arbitration clause" and that "[a]ll parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." Id. at 37. The clause provides that "**[a]ll controversies that may arise between you and us concerning any subject matter, issue or circumstance whatsoever (including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between you and us, whether entered into or arising before, on or after the date this account opened) shall be determined by arbitration through the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States securities exchange of which the person, entity or entities against whom the claim is made is a member, as you may designate.**" Id. (emphasis in original).

In an affidavit, D'Amico attests that he "did not open, nor did an authorized representative of mine open, Fidelity 'mySmart Cash Account' in 2010." D. 17-1 ¶ 8. D'Amico further states that he "did not have access to an electronic device capable of electronically opening an account since 2005." Id. ¶ 9.

      **C.**      <u>**The Operative Complaint**</u>

On February 27, 2023, D'Amico filed an amended, verified complaint, the operative complaint in this litigation. D. 11. In the amended complaint, D'Amico alleges that Fidelity refused to provide him with an accounting of his assets and refused to allow him to access to his funds. <u>Id.</u> ¶ 5(B). As a result, D'Amico alleges he was unable to address a foreclosure complaint filed against him on July 18, 2019. <u>Id.</u> ¶ 5(C). D'Amico separately asserts that Fidelity permitted an individual named "Michael Posner" to make unauthorized transactions with his funds. <u>Id.</u> ¶ 6(B).

According to an August 10, 2020 letter attached to the amended complaint, Fidelity wrote to D'Amico, who is incarcerated, "we are unable to provide copies of your account statements to a Correctional Institution due to privacy concerns." D. 11-1 at 5. The representative added, "[s]o you may access your assets, we still require that you appoint a trusted friend or family member to be your [Power of Attorney]." <u>Id.</u> In a subsequent letter from Fidelity, dated December 29, 2021, it wrote that "Fidelity elected to close your accounts in 2015." D. 11-2 at 8.

The Court has reviewed D'Amico's amended complaint and, considering his status as a *pro se* litigant, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972) (per curiam) (noting that allegations of a *pro se* litigant are held "to less stringent standards than formal pleadings drafted by lawyers"), construes it to allege the following claims: fraud, breach of contract, breach of fiduciary duty and conversion. D. 11 ¶¶ 1, 6.

**IV.**    **Procedural History**

On June 3, 2022, D'Amico file a complaint against Fidelity. D. 1. D'Amico filed an amended complaint on February 27, 2023. D. 11. Fidelity has moved to compel arbitration. D. 15.

5

## V.     Discussion

The "FAA compels judicial enforcement of a wide range of written arbitration agreements."  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001).  In relevant part, section 2 of the FAA provides that a "written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "[T]he FAA was designed to promote arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345 (2011), and "Section 2 embodies the national policy favoring arbitration," Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).  "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit."  Hogan v. SPAR Grp., Inc., 914 F.3d 34, 38 (1st Cir. 2019) (alterations in original) (quoting McCarthy v. Azure, 22 F.3d 351, 354 (1st Cir. 1994)).  "Thus, a party that attempts to compel arbitration 'must show [1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope.'"  Id. (quoting Oudani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017)).

The parties do not dispute that D'Amico opened the IRA Account in December 1, 1998.  See D. 16-1 at 2 ¶¶ 4, 5; D. 17-1 ¶ 2.  Fidelity has shown that the IRA Customer Agreement, which governed the IRA Account, contained a valid, enforceable arbitration clause.  See D. 16-1 at 2

6

¶¶ 4-5, 12–13. Because this arbitration clause is valid, Fidelity is entitled to invoke it and D'Amico is bound by same.

The Court next considers the scope of the arbitration provision. Where a contract "contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT&T Techs, Inc. v. Commc'ns. Workers of Am., 475 U.S. 643, 650 (1986) (alteration in original) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960)). "Such a presumption is particularly applicable where the clause is [ ] broad," PaineWebber, Inc. v. Landay, 903 F. Supp. 193, 197 (D. Mass. 1995) (quoting AT&T Techs., Inc., 475 U.S. at 650) (emphasis in original), as is the case here, where the IRA Customer Agreement covers "ALL CONTROVERSIES THAT MAY ARISE BETWEEN US CONCERNING ANY ORDER OR TRANSACTION, OR THE CONTINUATION, PERFORMANCE OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO BEFORE, ON OR AFTER THE DATE THIS ACCOUNT IS OPENED." D. 16-1 at 13. Given the breadth of this agreement, and the nature of D'Amico's allegations concerning the transactions associated with the IRA Account, D'Amico's claims are within the scope of the IRA Customer Agreement's arbitration clause.

As to the Cash Account Customer Agreement, D'Amico disputes that he, or an authorized representative, opened the Cash Account in 2010. See D. 17-1 ¶ 8; D. 24 at 2. Even assuming *arguendo* that he did not, however, the IRA Customer Agreement is sufficiently broad to encompass any allegations as to the Cash Account, D. 23 at 2, where it governs "all controversies" that may arise between the parties concerning the "breach of this or any other agreement." D. 16-

7

1 at 13.  Even if the IRA Customer Agreement was not sufficiently broad to warrant an order compelling arbitration, however, arbitration is also warranted here for the additional reason that any factual dispute between the parties bears on the validity of the Cash Account Customer Agreement and not the validity of the specific arbitration clause contained therein.  See Buckeye Check Cashing, Inc., 546 U.S. at 449 (recognizing that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator"); Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 10 (1st Cir. 2009) (noting that "a challenge to the validity of the contract itself is subject to arbitration and that allocation of authority to the arbitrator will also be respected by the court").[1]

Accordingly, the arbitration clause in the IRA Customer Agreement is valid and enforceable and covers his claims against Fidelity.

## VI. Conclusion

For the reasons stated, Fidelity's motion to compel arbitration, D. 15, is ALLOWED.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[1] D'Amico's citation to Kindred Nursing Centers Limited Partnership v. Clark, 581 U.S. 246, 248 (2017), D. 17 at 6; D. 18 at 1, does not warrant a different outcome here where that ruling reversed a state supreme court's ruling that the invalidation of an arbitration agreement in the absence of explicit authority in a power of attorney to enter into same violated the FAA, Kindred, 581 U.S. at 248.  Such ruling does not aid D'Amico's arguments here.  See D. 23 at 3 n.4.